UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD M. ANDERSON | CIVIL ACTION |
| VERSUS | NO. 07-2228 |
| THE STATE OF LOUISIANA ET AL. | SECTION "J" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Ronald M. Anderson, is a prisoner currently incarcerated in Orleans Parish Prison system ("OPP") in New Orleans, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the State of Louisiana and other unidentified state officials whom he alleges were responsible for his medical care. He alleges that while incarcerated in state custody at various facilities as a pretrial detainee during and after the time of Hurricane Katrina, he has not been provided with proper medical care for a hernia, including repair surgery. Record Doc. Nos. 1 (Complaint) and 14 (Statement of Facts). He seeks monetary compensation and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On July 30, 2007, defendant State of Louisiana filed a motion to dismiss, arguing that this court lacks subject matter jurisdiction of plaintiff's complaint, essentially because plaintiff's claims are legally frivolous and/or fail to state a claim of constitutional violation on which relief may be granted, and that the State is immune pursuant to the

Eleventh Amendment. Record Doc. No. 19. Plaintiff filed a written response. Record Doc. No. 22. In addition, plaintiff's other written submissions and his testimony provided during the two Spears conferences detailed below have also been considered in opposition to the motion.

This report addresses the pending motion to dismiss and includes a recommendation that the motion be DENIED at this time as premature.

## **THE RECORD**

On September 4 and 25, 2007, I conducted telephone conferences in this matter. Participating were plaintiff pro se; Assistant Louisiana Attorneys General Michéal Penn and Susan Shuey, counsel for defendants; and Timothy Richardson, counsel for the Criminal Sheriff of Orleans Parish, plaintiff's current custodian. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

During the first Spears conference, plaintiff testified that he is currently incarcerated in OPP after having been arrested in 2002 on two counts of murder. He said that no trial date has yet been set on the murder charges against him, despite the fact that he has been held for five years. He confirmed that the only claim he asserts in this case is that he has not received constitutionally adequate medical care for a hernia condition.

He said that his claim is against all of the various custodians at the several prison institutions where he has been held.

Anderson testified that surgery for his hernia condition has been medically recommended and, at one point in time when he was temporarily incarcerated in the Louisiana State Penitentiary at Angola in the aftermath of Hurricane Katrina, the surgery was scheduled to occur at Earl K. Long Hospital. He stated, however, that he never received his surgery. He testified that throughout his incarceration at various prisons, including currently OPP, he has submitted requests and administrative grievances to have his hernia surgery performed, but is has never occurred.  He said, "Until the time I first complained of it, and during all the transferring, when we were going from facility to facility, I hadn't had the surgery."

Plaintiff testified that he was told by one of the nurses at OPP that his hernia surgery had been scheduled for September 17, 2007, about two weeks after the initial <u>Spears</u> conference, at Tulane Medical Center in New Orleans.  He said he had just been taken by OPP deputies for an examination at Tulane Medical Center in August 2007 concerning his hernia condition. He said his medical records had been provided to Tulane from the former Charity Hospital.

Anderson testified that as a result of the delay in having his hernia surgery performed, he has experienced pain in his abdominal area, inability to move or sleep

3

well, and problems urinating. He stated that he was originally placed in OPP upon his 2002 arrest on murder charges, then returned to OPP in July 2006, after having been moved and incarcerated in the Hunt, Fort Wade, Bossier Parish and Angola prison facilities as a result of and after Hurricane Katrina in August 2005. He confirmed that he had spent 10 or 11 months in prison facilities other than OPP during the storm. He said he submitted medical requests for hernia surgery at every facility, except Bossier Parish where he stayed only briefly.

He said his main complaints are against whomever the responsible medical personnel are at Fort Wade, Angola and OPP. He said that at each facility he requested hernia surgery, was seen by doctors or other medical personnel, was told the surgery would be done, but "no one took me to go have the surgery taken care of . . . back and forth, back and forth [between prison facilities], so I don't know what happened, whoever was responsible for turning the papers in, or the doctors didn't perform it, or the state didn't forward the money to them to pay for the surgery, I don't know. . . . All I know, I was in the state's custody, under the state's care, so they're responsible" for the failure to perform his hernia surgery.

Anderson testified that he asked a doctor at OPP named Dr. "DiLeo" about his hernia surgery sometime in August 2007, but was told to write his congressman.

In light of plaintiff's testimony that he was scheduled for his hernia surgery only two weeks after the initial conference, I scheduled a second telephone conference on September 25, 2007 to determine if the subject hernia surgery had by then been performed. During that second conference, plaintiff testified that he was taken by OPP personnel to University Medical Center on September 17th, but his hernia surgery was again delayed because of some concerns expressed by the examining physician about "some prostate cancer."

Anderson testified that he was seen by a surgeon and a medical student on September 17, 2007, and the doctors conducted a prostate cancer test, which he "cleared, but still they wanted to go send me to another clinic and prolong the surgery." He said the doctors would request a date for the desired follow-up examination to conduct "some other tests about prostate cancer." He believed, however, that he had been cleared of any prostate cancer concerns and that the delay had resulted in a second hernia.

The various medical records concerning plaintiff's condition and treatment that have been provided to the court pursuant to my orders, Record Doc. Nos. 25, 29, 39 and 41, essentially confirm plaintiff's allegations and testimony. Among other things, the records indicate that Anderson was diagnosed with an inguinal hernia before he was transferred to OPP in May 2006 and that he was scheduled to be seen at Earl K. Long Hospital in Baton Rouge before his transfer. The records further indicate that, although

5

Anderson was referred to general surgery in February 2007 and twice thereafter he was examined at the Medical Center of Louisiana general surgery clinic, his surgery has been delayed for various reasons since that time.

During the second conference, counsel for the Orleans Parish Criminal Sheriff agreed that Dr. Samuel Gore, OPP medical director, would provide the court and plaintiff with a report concerning the status of plaintiff's condition, and Dr. Gore timely submitted his report.  Record Doc. No. 29.  Thereafter, plaintiff was taken by OPP deputies for a urological examination arranged by defendants at the Leonard Chabert Medical Center in Houma, Louisiana.  The medical records concerning that examination indicate that further clinical testing and a followup visit to the urology clinic have been scheduled, Record Doc. No. 37, and the court is awaiting the results of that testing.

## **ANALYSIS**

Pending before the court is the motion of defendant State of Louisiana to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Based on a recent United States Supreme Court decision, the federal Fifth Circuit has restated the standard for considering a motion to dismiss under Rule 12(b)(6).  Under Rule 12(b)(6), the court must take the well-pleaded factual allegations of the complaint as true, and must resolve any questions of fact and any ambiguities in the current controlling substantive law in the plaintiff's favor.  <u>In Re</u>

Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007); Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'  'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" In Re Katrina Canal Breaches Litig., 495 F.3d at 205 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974, 1965 (2007) (additional quotation marks, citations, and footnote omitted)).

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  United States ex rel. Bain v. Georgia Gulf Corp., 386 F.3d 648, 654 (5th Cir. 2004) (quotation omitted).

Plaintiff's testimony received during the Spears hearings must be considered in connection with the pending Rule 12(b)(6) motion because the purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis,

157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).

Defendant's motion is based principally on two grounds: (1) that plaintiff fails to state a cognizable claim that his constitutional rights were violated by the provision of improper medical care; and (2) that plaintiff's claims against the defendant State of Louisiana is barred by the Eleventh Amendment.

As to the medical care claim plaintiff was a pretrial detainee during the time period about which he complains. In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), the en banc Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were

sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Hare, 74 F.3d at 645.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, based upon plaintiff's pleadings as expanded by his testimony, it cannot be concluded at this point in time that state officials did not act with deliberate indifference to serious medical needs. Anderson clearly suffers from a painful condition that the medical records describe as requiring surgery. His hernia may well constitute a serious condition for constitutional purposes, but that conclusion cannot yet be reached while he continues to undergo testing and examination. It is also clear that his recommended surgery has been continually delayed. While mere delay in receiving care is not in and of itself a constitutional violation, <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990), unusual and continuous delay coupled with knowledge of a prisoner's serious medical condition and treatment needs, may give rise to an inference of deliberate

10

indifference to serious medical needs, see Easter, 467 F.3d at 463-64, particularly if that delay ultimately results in "a life-long handicap or permanent loss." Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'").  At this time the effect of the delayed surgery on plaintiff's future cannot be determined, again given plaintiff's ongoing testing and evaluation.

"[I]nadequate medical treatment may, at a certain point, rise to the level of a constitutional violation," Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999), but the court cannot conclude at this time whether such a level has or has not been reached in this case. "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet." Gobert, 463 F.3d at 346 (citations and internal quotations omitted). On the current two-edged record, which includes both continued delay in providing hernia surgery and ongoing efforts to determine the nature of plaintiff's condition, the need for corrective action, the reasons why his treatment has taken so long, and the

lasting effects, if any, of the delay, granting a motion to dismiss on grounds that plaintiff cannot state a constitutional claim concerning his medical care would be premature.

Similarly, dismissing defendant State of Louisiana at this time on Eleventh Amendment grounds would be premature. Clearly, the State of Louisiana is immune from suit for damages in federal court under the Eleventh Amendment. Sovereign immunity under the Eleventh Amendment bars actions for monetary relief in federal court against a State or state agency unless the State has consented to be sued. U.S. Const. amend. XI; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Ala. v. Pugh, 438 U.S. 781, 782 (1978); Richardson v. Southern Univ., 118 F.3d 450, 452 (5th Cir. 1997).

Generally, the State of Louisiana has not waived its immunity or consented to the exercise of federal judicial power in civil actions against it. La. Rev. Stat. Ann. § 13:5106(A); Delahoussaye v. City of New Iberia, 937 F.2d 144, 147 (5th Cir. 1991). Thus, in each unsanctioned instance of federal suit, the State or its agency must affirmatively waive its Eleventh Amendment immunity. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305 (1990); Stem v. Ahearn, 908 F.2d 1, 4 (5th Cir. 1990).

To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex parte

Young, 209 U.S. 123 (1908)).  This standard allows federal courts to order prospective relief and ancillary relief thereto where there exists a violation of federal law.  Id. (citing Edelman v. Jordan, 415 U.S. 651 (1974); Milliken v. Bradley, 433 U.S. 267 (1977); Green v. Mansour, 474 U.S. 64, 71-73 (1985)).

In addition, individual employees of the State of Louisiana who were responsible for plaintiff's medical care at the various prisons in which he was incarcerated, together with persons occupying similar positions at OPP, are state actors who may be appropriate defendants in this matter.  It is clear from plaintiff's written submissions, including his complaint, which referred to "all other medical personals (sic, 'personnel')" in the "additional defendants" section of the form, Record Doc. No. 1 at ¶ III(C), and his written statement of facts in support of his claim, Record Doc. No. 14 at ¶ 1, that he has always intended to include the individual state actors responsible for his medical care as additional named defendants, but that he does not know their names at this time. Plaintiff reiterated during his Spears testimony that he intended to name these individuals as additional defendants as soon as he can discover their names.  The court has undertaken by its previous order in this case to identify these individuals. Record Doc. No. 31. Of course, for the reasons discussed above, it cannot be determined if adding such individuals as named defendants in an amended complaint would be futile, until the

ongoing medical examinations and other treatment plaintiff is scheduled to receive are concluded.

## RECOMMENDATION

For all of the foregoing reasons, I conclude that granting defendant's motion to dismiss would be premature at this time.  It may be that at the conclusion of the medical attention plaintiff is currently expected to receive, reiteration of these arguments, perhaps in the form of a motion for summary judgment, might become appropriate. At this time, however,  it is **RECOMMENDED** that the motion of defendant, the State of Louisiana, to dismiss be DENIED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __7th__ day of January, 2008.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE